IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER SAMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 14-260-SLR |
| | ) |
| RONALD ANAYA, | ) |
| | ) |
| Defendant. | ) |

Walter Sammons, Smyrna, Delaware. Pro Se Plaintiff.

Roopa Sabesan, Esquire, Department of Justice, Wilmington, Delaware. Counsel for Defendant Ronald Anaya.

**MEMORANDUM OPINION**

Dated: March ⁂ , 2016
Wilmington, Delaware

ROBINSON, District Judge.

## I. BACKGROUND

Plaintiff Walter Sammons ("plaintiff") proceeds pro se and has paid a partial filing fee.[1] He filed this lawsuit on February 25, 2014. (D.I. 3 at 2) Plaintiff is currently incarcerated at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware and was incarcerated at the JTVCC at the time of the incident giving rise to this litigation ("incident"). (Id.) Defendant Ronald Anaya ("defendant") is currently employed as a correctional officer at the JTVCC and was employed as such at the time of the incident. (Id.) Plaintiff alleges that defendant used excessive force against him and violated his civil rights during the incident. Presently before the court is defendant's motion for summary judgment. (D.I. 44) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

The incident took place on April 16, 2012 in a transport van in an inmate holding area of the Kent County Courthouse in Dover, Delaware. (D.I. 3 at 2) Plaintiff and defendant agree that plaintiff refused to obey an order from defendant regarding the seating of inmates in the van, which precipitated the incident. (Id., D.I. 45 at 3) Plaintiff claims that, during the process of being transported from the courthouse to the JTVCC along with other inmates, he was "physically attacked" by defendant while plaintiff was seated in an inmate transport van and wearing shackles, handcuffs and other restraints. (D.I. 3 at 2) Plaintiff alleges that prior to the incident, defendant ordered another prison inmate to "sit on the [p]laintiff's lap" so that a fourth inmate could sit in the back of the

---

[1] On March 6, 2014, the court granted plaintiff's motion for leave to proceed in forma pauperis (D.I. 5) and on March 19, 2014, the court determined that "the plaintiff is required to pay an initial partial filing fee of $13.39." (D.I. 8 at ¶ 3)

van, and that "both the [p]laintiff and [the other inmate] refused." (*Id.*) Following this refusal, plaintiff claims that defendant "climbed in the van and on top of the [p]laintiff, put his knee in the middle of the [p]laintiff's chest, choked the [p]laintiff with his left hand and hit the [p]laintiff with the blunt end of a mace canister held in his right hand." (*Id.*) Plaintiff states that, as a result of the incident, he experienced "choke marks" on his neck, which then "turned to bruises." (*Id.*)

Although plaintiff alleges that other inmates witnessed the incident, no witness reports are in the record. (D.I. 48, ex. D) Plaintiff filed a grievance form detailing his account of the incident.[2] (D.I. 52) Plaintiff also submitted a photograph of himself indicating red marks around plaintiff's neck following the incident. (*Id.*) In addition, plaintiff submitted a sworn statement regarding the veracity of the contents of his answering brief and the copied documents contained in the appendix to the answering brief. (D.I. 51) Further, plaintiff stated that defendant acted unreasonably because he "ordered inmates to sit on other [inmates'] laps," and that defendant's actions made compliance impossible.[3] (D.I. 54 at ¶ 1)

Defendant asserts that because plaintiff refused to move and allow another inmate to sit in the van, he "went into the second to last row of the van, directly in front of [p]laintiff, faced [p]laintiff, and closed [p]laintiff's legs that were spread wide open." (D.I. 45 at 3) Defendant claims that he then "proceeded to hold on to [p]laintiff's shirt

---

[2] Plaintiff's handwritten statement on the grievance form appears to contain the same allegations that were made in plaintiff's complaint, as well as a statement by plaintiff that another officer witnessed the attack and did not support the actions taken by defendant with respect to plaintiff. (D.I. 52)
[3] Plaintiff follows this assertion with a hand drawn diagram to illustrate what would have occurred, had defendant moved plaintiff by his collar. (D.I. 54 at ¶ 4)

2

near the collar and attempted to move [p]laintiff to [p]laintiff's right." (*Id.* at 3-4) Defendant also states that, after plaintiff became uncooperative in moving over, he then "ceased attempting to move [p]laintiff and exited the van," and that "[a]t no time did [he] stand in the last row of the van and place his knee on [p]laintiff's chest." (*Id.* at 4) Furthermore, defendant states that "at no time did [he] ever choke [p]laintiff or hit him with a can of Cap-Stun."[4] (*Id.*)

Andrew Gilliss ("Officer Gilliss"), another correctional officer present during the incident, filed a declaration stating that plaintiff refused to follow defendant's order regarding seating inside the van, and that defendant "behaved reasonably and in accordance with protocol in attempting to have [p]laintiff follow an order and move over in the transportation van." (D.I. 47 at ¶¶ 4, 8) Further, Officer Gilliss' declaration states that "[a]t no time did [he] tell [p]laintiff that [defendant's] behavior was inappropriate or that [he] would be writing an incident report regarding it." (*Id.* at ¶ 8) In addition, the incident reports filed by both defendant and Officer Gilliss state that, at the time the inmates were unloaded from the van at JTVCC following the incident, plaintiff did not complain about any injuries. (*Id.*, ex. A, C)

Multiple reports filed by employees of JTVCC also describe the incident. These incident reports state that defendant confronted plaintiff after plaintiff made remarks indicating his intent not to follow defendant's order.[5] (D.I. 48, ex. C) Further, the

---

[4] These assertions, made in defendant's opening brief accompanying defendant's motion for summary judgment, are reflected in defendant's declaration. (D.I. 46)
[5] The incident reports indicate that plaintiff did not cooperate with defendant's order to move inside the van, and that plaintiff remained uncooperative. Specifically, the reports state that when plaintiff refused to make room for another inmate in the van, plaintiff told defendant, "you have to spray me I am not [going] into the back seat" (D.I. 48, ex. B),

3

reports indicate that after plaintiff refused to obey defendant's order and accommodate an additional inmate in the back of the van, defendant grabbed plaintiff by his collar in an attempt to move plaintiff to create additional seating room. (*Id.*, ex. A, B) Further, the reports state that following the incident, JTVCC medical staff evaluated plaintiff and that plaintiff "did appear to have red irritated marks on his right neck area and was photographed by [Officer Justin K. Weeks]." (*Id.*, ex. D) While one report indicates that other inmates "allege that they were in the van and witnessed the alleged assault," it also states that "[n]o statements were taken from the inmate witnesses." (*Id.*)

A report documenting a medical examination of plaintiff upon his return to the JTVCC indicates that the examining nurse considered plaintiff to be in normal physical condition. (D.I. 48, ex. G) Further, in commenting on any abnormal findings, the examining nurse wrote, "no current bruising on neck," and "[patient] claims to have been choked out by an officer...[patient] claims pain." (*Id.*)

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents,

---

and "[y]ou're going to have to [] [s]pray me....You're going to have to [] [s]pray me." (D.I. 48, ex. C)

4

electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to

5

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## III. DISCUSSION

Because plaintiff was a pretrial detainee at the time of the incident, plaintiff's allegations are considered under the Fourteenth Amendment's Due Process Clause, which prohibits the State from imposing punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979). The United States Supreme Court has held that courts must apply an objective standard when considering a pretrial detainee's claim of excessive force. *Kingsley v. Hendrickson*, __ U.S. __ , 2015 WL 2473447, *5 (June 22, 2015). The Court concluded that a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* Objective reasonableness "turns on the facts and circumstances of each particular case." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court identified several factors relevant in determining whether the force used was excessive. This nonexclusive list includes:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at *6.

In announcing the objective standard, the Court recognized that operating a prison is "an inordinately difficult undertaking" and "that the safety and order at these institutions requires the expertise of correctional officials, who must have substantial

6

discretion to devise reasonable solutions to the problems they face." *Id.* at *7 (quoting *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. \_\_\_, 132 S. Ct. 1510, 1514 (2012)). The Court further explained that "an officer enjoys qualified immunity and is not liable for excessive force unless he has violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

In the instant case, the majority of plaintiff's assertions simply deny the statements made by defendant in support of defendant's motion for summary judgment in that plaintiff merely reiterates his factual allegations that conflict with those presented by defendant. The record demonstrates that defendant's conduct was objectively reasonable in light of the standard articulated above. The record reflects that plaintiff was seated inside the van. Although the parties' accounts of the incident differ, it is established that an altercation occurred between the parties on the van, and that plaintiff refused to cooperate with defendant's order to move within the van while defendant was arranging for the transport of other inmates. The medical report demonstrates that whatever force was used by defendant resulted in minimal injury to plaintiff. The evidence of record (including incident reports suggesting that plaintiff did not complain of injuries at the time of the incident; the medical report showing that plaintiff had no bruises or other serious injuries; and the declaration of Officer Gilliss) all indicate that defendant's conduct was objectively reasonable. The court concludes that, even considering the underlying facts surrounding the incident and all reasonable

inferences therefrom in the light most favorable to plaintiff, defendant's use of force was objectively reasonable.[6]

## IV. CONCLUSION

For the above reasons, the court concludes that defendant's use of force was objectively reasonable. Accordingly, defendant's motion for summary judgment (D.I. 44) is granted. An appropriate order shall issue.

---

[6] Given this conclusion, the court does not address the second argument made in support of defendant's motion for summary judgment, that defendant is entitled to qualified immunity. (D.I. 45 at 2)

8